## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

LOGAN HUSKEY, HEATHER
HUSKEY, DANIEL FOLDEN and
NICOLE FOLDEN, Individually
and on behalf of all others similarly
situated,

**Case No. 6:23-cv-601**

**CLASS ACTION**

       **Plaintiffs,**

**JURY TRIAL DEMANDED**

v.

WYNDHAM VACATION RESORTS,
INC., WYNDHAM VACATION
OWNERSHIP, INC. AND TRAVEL +
LEISURE CO. F/K/A WYNDHAM
DESTINATIONS, INC.,

       **Defendants.**

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Logan Huskey, Heather Huskey, Daniel Folden and Nicole Folden (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, sue Defendants Wyndham Vacation Resorts, Inc., Wyndham Vacation Ownership, Inc. and Travel + Leisure Co. f/k/a Wyndham Destinations, Inc.[1] (referred to herein as "Wyndham" or "Defendants") and allege:

_____

[1] Plaintiffs allege claims against all Defendants as alter egos of one another, as explained more fully herein

## INTRODUCTION

1.      This Complaint seeks to void timeshare loans that violate the Military Lending Act ("MLA"), 10 U.S.C. § 987, which was enacted to protect members of the United States Military from an epidemic of predatory lending that endangers our Nation's military readiness and impacts servicemember retention.

2.      Wyndham sells vacations, or more accurately, the potential to book a future vacation through a complex system of vacation club points that are tied to Wyndham owned timeshare properties. As part of the transaction, Wyndham traps servicemembers into loans that can never be repaid due to never ending maintenance fees.

3.      A combination of factors make active-duty servicemembers uniquely attractive to Wyndham, including, among other reasons: 1) they are required to pay their financial obligations in a  timely manner under the Uniform Code of Military Justice, 2) they have a reliable source of income that is subject to garnishment, 3) they are relatively unsophisticated consumers given their average age and educational background, and 4) for those servicemembers who have a security clearance, they risk losing their job entirely if they fail to pay their debts.

4.      Accordingly, Wyndham targets military consumers by offering them discounts and "free tickets" to entertainment venues, gift cards, and free

vacations. Once they agree to the "free" items, military families are lured into high-pressure timeshare sales presentations where they are frequently convinced to purchase timeshare vacation points.

5. The MLA covers an incredibly broad range of credit transactions and is closely aligned with the broad definition of credit used in the Truth in Lending Act (TILA) and Regulation Z, with only a few narrowly defined exceptions. When consumer credit is extended to an MLA Covered Borrower, the MLA requires additional disclosures, and limits the amount of interest that can be charged. The MLA also prohibits the use of mandatory arbitration clauses, restricts methods of payment, and enforces any other rights provided to the borrower under state or federal laws.

6. Although it targets military families, Wyndham's standard course of business routinely violates the MLA. Specifically, it fails to provide any of the required MLA disclosures and it unlawfully requires mandatory binding arbitration.

7. As a result, the timeshare loans made to Plaintiffs and other similarly situated servicemembers are "void from inception" under to the MLA. This lawsuit seeks declaratory relief voiding the credit agreements of Plaintiffs and the Class, as well as restitution damages to recover the money paid to Wyndham, and all other actual damages caused to Plaintiffs and the Class by Wyndham's routine violations of the MLA.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this matter pursuant to 10 U.S.C. § 987 and 28 U.S.C. § 1331.

9.    This Court has personal jurisdiction over Defendants because Defendants are headquartered in Florida at all times relevant to this Complaint, and engaged in much of the actions complained of herein in Florida.

10.    Venue is proper in this district pursuant to 10 U.S.C.A. § 987(f)(5)(E) and 28 U.S. § 1391, because Defendants reside in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

11.    Plaintiffs have Article III standing because they suffered a concrete injury in that: (a) they are obligated to pay money under the terms of timeshare loan agreements that were void from inception because they violated the MLA, (b) they have made payments on the unlawful loans in violation of the MLA, and (c) they require declaratory and injunctive relief voiding the loans at issue, precluding enforcement of both the arbitration clause and the class action ban.

## PARTIES

12.    Plaintiff Logan Levi Jacob Huskey is *sui juris*, a citizen of Florida and serving on active duty in the United State Army.

4

13.    Plaintiff Heather Michelle Huskey is *sui juris* and a citizen of Florida.

14.    Plaintiff Daniel Folden is *sui juris*, a citizen of New York, and serving on active duty in the United States Air Force.

15.    Plaintiff Nicole Folden is *sui juris* and a citizen of New York.

16.    On June 1, 2018, Wyndham Worldwide Corporation split into two publicly traded companies: Wyndham Destinations, Inc., which focuses on the vacation ownership at issue in this action, and Wyndham Hotels and Resorts, Inc., which focuses on hotels and resorts.

17.    On January 5, 2021, Wyndham Destinations, Inc. acquired the Travel + Leisure brand. In connection with the acquisition, on February 17, 2021, Wyndham Destinations, Inc. was renamed Travel + Leisure Co. and trades on the New York Stock Exchange under the ticker symbol TNL.

18.    Defendant Travel + Leisure Co. f/k/a Wyndham Destinations, Inc. is a Delaware corporation, with its principal place of business in Orlando, Florida.

19.    Defendant Travel + Leisure Co. conducts a substantial amount of business in Florida and this District, including the operation of its wholly-owned subsidiaries Wyndham Vacation Ownership, Inc. and Wyndham Vacation Resorts, Inc., which have their principal places of business in Orlando, Florida.

20.     Defendant Travel + Leisure Co. operates under several brands/subsidiaries, including but not limited to Wyndham Vacation Resorts, Inc. and Wyndham Vacation Ownership, Inc.

21.     Defendant Wyndham Vacations Resorts, Inc. is a Delaware corporation, with its principal place of business in Orlando, Florida.

22.     Defendant Wyndham Vacations Resorts, Inc. is listed as the lender, seller and settlement agent on all of the Plaintiffs' Closing Disclosures for their purchases of the Wyndham timeshare interests.

23.     Defendant Wyndham Vacations Resorts, Inc. is a subsidiary of Defendant Wyndham Vacation Ownership, Inc. and Travel + Leisure Co.

24.     Wyndham Vacation Ownership, Inc. is a Delaware corporation with its principal place of business in Orlando, Florida.

25.     Defendants Wyndham Vacation Resorts, Inc. and Wyndham Vacation Ownership, Inc. are both subsidiaries of Defendant Travel + Leisure Co. that exercises dominion and control over its subsidiaries.

26.     Although separate corporations, all Defendants engage in uniform and common operations related to the ownership and operation of vacation ownership resorts and the marketing and sale of vacation ownership interests.

27.     All Defendants share the same offices in Orlando, Florida located at 6277 Sea Harbor Drive Orlando, FL 32821.

28.    All Defendants share many of the same officers and directors, including the same President/CEO, secretary, tax vice president, and treasurer.

29.    All of the Defendants share the same registered agent in Florida: Corporation Service Company located at 1202 Hays Street, Tallahassee, FL 32301.

30.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venture of each of the other Defendants and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, and their collective conduct constitutes violations of the MLA as to Plaintiffs and all class members.

31.    Defendants were fully informed of the actions of their agents and employees, and thereafter no officer, director or managing agent of Defendants repudiated those actions, which failure to repudiate constituted adoption and approval of said actions and all Defendants and each of them, thereby ratified those actions.

32.    At all material times, there existed a unity of interest in ownership between certain Defendants such that any individuality and separateness between those Defendants has ceased and they are the alter ego of the other

Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and/or would promote injustice.

33.    For the reasons set forth in paragraphs 16-32, Defendants are jointly and severally liable for all the violations of the MLA alleged herein.

## FACTUAL ALLEGATIONS

### Plaintiffs Daniel Folden and Nicole Folden

34.    In May 2018, Staff Sergeant Daniel Folden (active duty military with the United States Air Force), and his spouse Plaintiff Nicole Folden were on vacation in Myrtle Beach, South Carolina.

35.    On May 14, 2018, the Foldens were approached by a representative from a kiosk within the resort (unknown at the time the it was related to a Wyndham timeshare), offering them "free" tickets to a show in exchange for a $20 deposit to be picked up the next day at the North Myrtle Beach Preview Center.

36.    The next day, upon arrival, the Foldens were told that they were required to attend a mandatory presentation in order to retrieve the "free" tickets and not lose their $20 deposit.

37.    The Foldens were subsequently subjected to a 6-hour high pressure sales pitch on Wyndham's timeshare vacation points program. During

the presentation and in one-on-one conversations later, Plaintiffs were informed by Wyndham's sales agents that they could get a better deal because they were in the military.

38.    Ultimately, on May 15, 2018, the Foldens entered into a timeshare contract with Wyndham to purchase 200,00 points.  The purchase price of these points was $23,479.20,[2] with a monthly payment of $380.95.

39.    The Foldens made timely payments thereafter.

40.    Beginning in September 2018, the Foldens began receiving almost daily calls from a Wyndham sales representative informing them they could lower their overall interest rate and gain additional points.

41.    The Foldens were then pushed on October 19, 2018 via a Wyndham sales representative to purchase an additional 28,000 timeshare points from Wyndham on the promise that this additional purchase would decrease their interest rate on their prior outstanding loan with Wyndham. The purchase price of these new points was $5,106.60, with a monthly payment of $73.57.

42.    However, the Foldens later learned that while the additional points were purchased at a lower interest rate, the second purchase did not have any effect on the interest rate in their initial May 2018 loan.

---

[2] The purchase prices represented herein state the amount financed by Plaintiffs for each transaction.

43.    At this point, the Foldens had two separate timeshare contracts with Wyndham totaling 228,000 total points. (200,000 points in May 2018 and 28,000 points in October 2018). Each of these contracts came with its own yearly "maintenance fee" that had to be paid over and above the monthly payments.

44.    In November 2018, the Foldens visited a Wyndham timeshare resort in Gatlinburg, Tennessee for their family vacation. During this trip, Wyndham required the Foldens to attend a breakfast presentation in order to review their existing contracts.

45.    During the presentation, the Foldens were informed by a Wyndham sales representative that they could "rent" out their timeshare in order to offset their monthly payments. To take advantage of this program, however, the Foldens had to purchase more points.

46.    On November 18, 2018, the Foldens entered into a loan agreement to purchase an additional 126,000 points and consolidate their two previous 228,000 contracts with Wyndham. (Exhibit A, Folden November 2018 Timeshare Contract).

47.    Thus, at the time of filing this Complaint, the Foldens have only one existing timeshare contract with Wyndham: the November 2018 Timeshare Contract for 354,000 points at a total sale price of $51,558.58 and a

monthly payment of $820.25, plus yearly maintenance costs of approximately $1,600 per year.

48.     In December 2018, the Foldens contacted Wyndham in order to "rent" out their timeshare for the upcoming new year holiday to help offset their monthly payment.

49.     However, Wyndham informed the Foldens that they were not eligible to rent out their timeshare.

50.     The Foldens then realized they could not afford the high monthly payments or carry the maintenance costs on their timeshare loan without the ability to rent out their timeshare interest.

51.     As a result, the Foldens ceased making payments on the November 2018 Timeshare Contract in January 2019.

52.     Wyndham has reported the Foldens' failure to pay to the credit reporting agencies as delinquent.

53.     In September 2021, Staff Sergeant Daniel Folden's commanding officer was notified about the outstanding Wyndham indebtedness. As a result, Staff Sergeant Folden's ability to maintain his security clearance and his overall employment with the United State Air Force is currently in jeopardy.

54.     Because of this indebtedness and detrimental credit reporting, the Foldens were prevented from purchasing a home and leasing an automobile.

**Plaintiffs Logan Huskey and Heather Huskey**

55.    In December 2022, Servicemember Logan Huskey and his spouse, Plaintiff Heather Huskey were on vacation in Pigeon Forge, Tennessee.

56.    While shopping at Wal-Mart, on December 21, 2022, the Huskeys were approached by a "veteran" working in a kiosk operating within Wal-Mart, offering the Huskeys "free" tickets to an entertainment facility, a "free" $50 gift card and a free vacation at any Wyndham location in exchange for a sitting through a presentation.  The Huskeys were required to sign a "promise to show" and pay a refundable $40 deposit at that time.

57.    Upon arrival, the Huskeys were told that they were required to attend a mandatory presentation in order to retrieve the "free" tickets and not lose their $40 deposit.

58.    The Huskeys were subsequently subjected to a 5-hour high pressure sales pitch on Wyndham's timeshare vacation points program. During the presentation and in one-on-one conversations later, the Huskeys were informed by Wyndham's sales agent that they could rent out their timeshare to offset any monthly payments such that the end result would be a free vacation without any out-of-pocket monthly payments.

59.    The Huskeys were also informed by the Wyndham sales representative that they could sell back their timeshare at any time.

60.    Ultimately, on December 22, 2022, the Huskeys entered into a timeshare contract with Wyndham to purchase 200,00 timeshare points. The purchase price of these points was $23,399.20,[3] with a monthly payment of $379.56, plus a yearly maintenance cost of approximately $1,600.  (Exhibit B, Huskey 2022 Timeshare Contract).

61.    In January 2023, the Huskeys sought to cancel the sale. However, contrary to the representations made by the Wyndham sales representative during the sales presentation, they were informed that they could not cancel the sale or "sell back" their timeshare.

62.    The Huskeys paid money to Wyndham in connection with their December 2022 timeshare purchase.

63.    Because of this indebtedness, Servicemember Logan Huskey is currently in jeopardy of losing his security clearance and being involuntarily terminated from the Army.

## Wyndham

64.    Wyndham is a creditor for timeshare interests throughout the United States.  Wyndham's entire marketing scheme is centered on the selling of timeshare vacation points.  Its website is replete with references to "vacation ownership" and timeshares and not to the sale of real estate.  The tab on the

---

[3] The purchase prices represented herein state the amount financed by Plaintiffs for each transaction.

Wyndham Resorts website titled "Why Vacations Clubs" explains the true nature of what is sold in the timeshare transactions – vacation points, not an ownership interests in dwellings. *See* https://www.wyndhamdestinations.com/us/en/why-vacation-clubs

65.    Wyndham has over 245 different resorts and more than 850,000 timeshare owners.[4]  Wyndham has sold and loaned the money to purchase thousands of timeshares, including, upon information and belief, making timeshare loans to hundreds military servicemembers who are "covered borrowers" under the MLA.

66.    Upon information and belief, Wyndham used the standard- form timeshare contracts for all loans for timeshare interests at Wyndham timeshare resorts with no relevant variations for MLA covered borrowers.

67.    Wyndham is a "creditor" which provided "credit" to Plaintiffs, as those terms are defined in 32 C.F.R. § 232.3(h) and (i) of the MLA.

68.    To obtain financing, Plaintiffs provided their social security numbers, their military identification cards, their place of employment, and/or other credit information to Wyndham, placing Wyndham on notice of their status as covered borrowers under the MLA.

---

[4] https://www.wyndhamdestinations.com/us/en/our-company

69.    Wyndham knew or should have known of Plaintiffs status as active-duty military members and dependents, as the Plaintiffs provided Wyndham with their credit information and Wyndham verified the same before entering into the Agreements.

70.    Additionally, Wyndham has uniformly and systematically failed to implement policies and procedures to ensure compliance with the MLA's mandatory written and oral disclosures and limitations as part of or in connection with their standard-form contracts that they use uniformly at their timeshare resort locations.  There is no mention of MLA protections appearing anywhere in any of the Agreements and none were provided to Plaintiffs and the Class via any supplemental notices or disclosures.  As a result, all the contracts and loans are void as a matter of law.

## The Military Lending Act, 10 U.S.C. § 987

71.    The United States Congress passed the Military Lending Act of 2006, which was implemented as part of the John Warner National Defense Authorization Act for Fiscal Year 2007.  Specifically, section 670, was written to protect military servicemembers from unfair or abusive loan or credit sale transactions, such as high interest, short-term, or installment loans to inexperienced military borrowers, who in years prior to enactment had fell victim to predatory lending.

72.    The MLA is set forth in 10 U.S.C. § 987.

73.    Section 987(h) of the MLA directs the Department of Defense ("DoD") to prescribe regulations to carry out the MLA. DoD regulation, 32 C.F.R. Part 232, implements the MLA and contains limitations on and requirements for certain types of consumer credit extended to active duty servicemembers and their dependents ("covered borrowers").

74.    Under the MLA, "consumer credit" is defined as:

Credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is:

(i)    Subject to a finance charge; or

(ii)    Payable by a written agreement in more than four installments.

32 CFR § 232.3.

75.    Wyndham's timeshare loans constitutes an extension of "consumer credit," as defined under 32 CFR § 232.3 because (1) Plaintiffs and the other Class members were "covered borrowers" because they were serving on active duty at the time the contracts were entered into (2) their timeshare interests were primarily for personal, family, or household purposes, (3) the loans were subject to finance charges, and (4) the debt was payable pursuant to written agreements payable in more than four installments.

76.    The MLA places a duty on creditors to determine whether a potential borrower is a "covered borrower." Creditors can use the free MLA Database maintained by the Department of Defense to make this

determination.  There is nothing in the MLA requiring Plaintiffs to identify themselves as "covered borrowers."

77.    The MLA requires three specific disclosures be made whenever a lender extends consumer credit to covered borrowers, including:

(1)    A statement of the MAPR applicable to the extension of credit;

(2)    Any disclosure Regulation Z requires to be made in accordance with the applicable Regulation Z provisions; and

(3)    A clear description of the payment obligation, which can be either a payment schedule for closed-end credit, or account opening disclosures consistent with Regulation Z for open-end credit, as applicable.

32 CFR § 232.6(a).

78.    Wyndham made no attempt to determine if Plaintiffs were covered borrowers under the MLA.

79.    On information and belief, it is Wyndham's routine and systematic business practice to not use the DoD database or any other available method to determine whether an individual is a covered borrower in order to comply with the MLA.

80.    Wyndham violates the MLA in three distinct ways, each of which independently make the contract "void from inception."

81.    First, none of Wyndham's timeshare contracts include the required "statement of the MAPR" as required by 32 CFR § 232.6(a).

82.    On information and belief, it is Wyndham's routine business practice to not include a valid "statement of the MAPR" in any of its timeshare contracts.

83.    As a result of failing to provide the required Statement of MAPR disclosure, the Folden's Timeshare Contract and Huskey's Timeshare Contract are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

84.    Second, the MLA (10 U.S.C. § 987(e)(3)) also prohibits creditors from requiring covered borrowers to submit to mandatory arbitration.

85.    Wyndham's standard-form timeshare contracts include binding mandatory arbitration provisions with no exception for covered borrowers under the MLA, including both contracts entered into by Plaintiffs.

86.    In a 2006 DoD Report supporting the MLA, the DoD stated: "Service members should maintain full legal recourse against unscrupulous lenders. Loan contracts to Service members should not include mandatory arbitration clauses or onerous notice provisions, and should not require the Service member to waive his or her right of recourse, such as the right to participate in a plaintiff class. Waiver is not a matter of "choice" in take-it-or leave-it contracts of adhesion. To the contrary, Service members should be

given the opportunity to hold lenders accountable for situations where they have violated their rights." Department of Defense, Report on Predatory Lending Practice Directed at Members of the Armed Forces and Their Dependents (Aug. 9, 2006), at pg. 7.

87.    As a result of unlawfully requiring covered borrowers, including Plaintiffs, to enter into contracts containing mandatory arbitration provisions in violation of 10 U.S.C. § 987(e)(3), the Folden's Timeshare Contract and Huskey's Timeshare Contract are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c). Plaintiffs are due actual damages of not less than $500 for each MLA violation.

88.    Third, 10 U.S.C. § 987(e)(2) of the MLA prohibits creditors from requiring covered borrowers to "waive the borrower's right to legal recourse under any otherwise applicable provision of State or Federal law."

89.    Wyndham's standard-form timeshare contracts include a class action waiver provision which specifically requires Plaintiffs and all Class Members to "waive any right bring or join any representative or other claim brought on behalf of the general public, other PURCHASERS, or other persons similarly situated. (Exhibit A at Section 17 and Exhibit B at Section 34).

90.    The right to participate in a class action stems from the Rules of Civil Procedure under both State and Federal law, including the right to bring this class action lawsuit under the MLA.

91.     As a result of unlawfully requiring covered borrowers to waive their right to file or even participate in any class action lawsuit in violation of 10 U.S.C. § 987(e)(2) of the MLA, the timeshare contracts of Plaintiffs all members of the Class are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c). Plaintiffs are due actual damages of not less than $500 for each MLA violation or $1,500 for the three violations specifically set forth herein.

## CLASS ALLEGATIONS

92.     Plaintiffs bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed "Class" includes the following:

> All Covered Borrowers who financed a timeshare from Wyndham within the five (5) years prior to the filing of the initial Complaint in this matter.

93.     Expressly excluded from the Class and subclass are: (a) any Judge presiding over this action and members of their immediate families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and their legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

94.    Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

### Rule 23 Criteria

95.    <u>Numerosity</u>. Because Wyndham targets military consumers as set forth above, and because Wyndham has approximately 850,000 timeshares owners, Plaintiffs believe that there are at least 100 class members.  Joinder of this many class members would be impracticable. The exact number of Class members is unknown, as such information is in the exclusive control of Wyndham. However, the number of Class members can be easily determined by obtaining a list of persons who purchased and financed timeshare interests from Wyndham during the class period and running those names through the DoD database created for this purpose. Upon information and belief, Wyndham maintains the information electronically necessary to generate such a list necessary to identify the members of the Class.

96.    <u>Commonality</u>. Common questions of law and fact affect the rights of each Class member and common relief by way of damages is sought for Plaintiffs and Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

    a.    Whether Wyndham entered into standard-form timeshare contracts with servicemembers and their dependents;

b.      Whether the timeshare contracts constitute an extension of consumer credit under the MLA;

c.      Whether Wyndham failed to provide required MLA disclosures in violation of the MLA;

d.      Whether Wyndham's standard-form timeshare contracts contain binding arbitration clauses in violation of the MLA;

e.      Whether Wyndham's standard-form timeshare contracts contain class action waiver provisions in violation of the MLA;

f.      Whether the timeshare loans and contracts made to the class are void from inception due to violations of the MLA;

g.      The remedies and damages to which Plaintiffs and the Class are entitled to under 10 U.S.C. § 987(f)(5).

97.    <u>Typicality</u>. The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class because they are covered borrowers under the MLA like the rest of the Class and their claims arise under the same legal theories and out of a common course of conduct by Wyndham. The contracts used in Plaintiffs' transactions with Wyndham are standardized agreements that are also used by Wyndham to sell timeshares to the other members of the Class.  None of these standardized agreements contain the required "Statement of MAPR" as required by the MLA.  Similarly, Wyndham's

standardized contracts also contains a binding arbitration clause in direct violation of the MLA. As a result, these contracts are void from inception and Plaintiffs have suffered statutory and actual damages of the same type and in the same manner as the Class they seek to represent. There is nothing peculiar about Plaintiffs' claims when compared to those of the other members of the Class.

98.    <u>Adequacy</u>. The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class. As active duty military servicemembers and their dependents, Plaintiffs are all "covered borrowers" under section 987(c)(A) of the MLA. Plaintiffs have no conflict of interest with the class members they seek to represent. They have hired attorneys who likewise have no conflicts of interest with the Class and who are experienced in prosecuting class actions, consumer protection law claims and MLA claims in particular, and will adequately represent the interests of the class.

99.    <u>Predominance and Superiority</u>. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the MLA require a simple identification of those consumers who were also covered borrowers

at the time of their transaction, which can be accomplished by the use of the MLA database provided by the DoD.

b.   Prosecution of a separate action by each individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

c.   Most covered borrowers are unaware that their loans are void under the MLA;

d.   Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

e.   Defendants reside in this District and violated the MLA within this District, making this Court appropriate for the litigation of the claims of the entire Class; there are very few attorneys in the United States with any expertise or experience in this nascent area of law making it nearly impossible for Class members to find adequate representation; and the novelty of these claims and the fact that individual damages may be modest in comparison to the time required to litigate the case make a Class action the only viable procedural method of redress in which Class members can,

as a practical matter, recover for the conduct at issue.  In fact, the vast majority of class members are not even aware that they have a claim.

100.  Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole. Plaintiffs and the Class are entitled to a declaration that their contracts are void and Defendants should be enjoined from attempting to collect any monies pursuant to them or to enforce them in any way.

## COUNT I

### Violation of the Military Lending Act
### On Behalf of the Class

101.  Plaintiffs and the Class repeat and re-allege the allegations in paragraphs 1 through 100 as if set forth herein in full.

102.  Servicemember Daniel Folden and his wife, Nicole Folden and all the other members of the Class were "covered borrowers" and "covered members" as those terms are defined by 32 C.F.R. § 232.3(g).

103.  Daniel Folden was serving as an active-duty member of the United States Air Force at the time of entering into the timeshare contract with Wyndham.

104. Servicemember Logan Huskey and his wife, Heather Huskey, and all the other members of the Class were "covered borrowers" and "covered members" as those terms are defined by 32 C.F.R. § 232.3(g).

105. Plaintiff Logan Huskey was serving as an active-duty member of the United States Army at the time of entering into the timeshare contract with Wyndham.

106. Plaintiffs Daniel Folden and Logan Huskey are both listed in the MLA database as serving as active duty servicemembers covered by the MLA on the date of the timeshare contracts at issue.

107. Members of the putative class are also those individuals who are listed in the MLA database as covered borrowers on the date they executed a timeshare purchase contract with Wyndham.

108. Wyndham is a "creditor" that provided "consumer credit" to Plaintiffs and the Class as those terms are defined in 32 C.F.R. §232.3(f), (h) & (i).

109. Wyndham violates the MLA in three separate ways for all class members: (1) failure to provide a "statement of the MAPR"; (2) by requiring covered borrowers to arbitrate; and (3) by requiring covered borrowers to waive their right to participate in a class action. Each of these violations constitutes a separate and independent violation of the MLA, and provides a separate and

independent basis for voiding the timeshare contracts of Plaintiffs and the Class.

## NO STATEMENT OF THE MAPR

110.   First, 10 U.S.C. § 987 (c)((1)(A) and 32 C.F.R. § 232.6 makes mandatory the following disclosures in all loans to covered borrowers:

(a) Required information. With respect to any extension of consumer credit (including any consumer credit originated or extended through the internet) to a covered borrower, a creditor shall provide to the covered borrower the following information before or at the time the borrower becomes obligated on the transaction or establishes an account for the consumer credit:

(1) A statement of the MAPR applicable to the extension of consumer credit;

(2) Any disclosure required by Regulation Z, which shall be provided only in accordance with the requirements of Regulation Z that apply to that disclosure; and

(3) A clear description of the payment obligation of the covered borrower, as applicable. A payment schedule (in the case of closed-end credit) or account-opening disclosure (in the case of open-end credit) provided pursuant to paragraph (a)(2) of this section satisfies this requirement.

….

(c) Statement of the MAPR—

(1) In general. A creditor may satisfy the requirement of paragraph (a)(1) of this section by describing the charges the creditor may impose, in accordance with this part and subject to the terms and conditions of the agreement, relating to the consumer credit to calculate the MAPR. Paragraph (a)(1) of this section shall not be construed as requiring a creditor to

describe the MAPR as a numerical value or to describe the total dollar amount of all charges in the MAPR that apply to the extension of consumer credit.

(2) Method of providing a statement regarding the MAPR. A creditor may include a statement of the MAPR applicable to the consumer credit in the agreement with the covered borrower involving the consumer credit transaction. Paragraph (a)(1) of this section shall not be construed as requiring a creditor to include a statement of the MAPR applicable to an extension of consumer credit in any advertisement relating to the credit.

(3) Model statement. A statement substantially similar to the following statement may be used for the purpose of paragraph (a)(1) of this section: "Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account)."

111.  Wyndham's standard-form timeshare contracts and closing disclosure statements used in its timeshare sales to Plaintiffs and the Class do not provide any "Statement of the MAPR" either in the form of a description of the charges necessary to calculate the MAPR or through the inclusion of the MLA Model Statement.

112. Pursuant to 32 C.F.R. § 232.9(c), "any credit agreement, promissory note., or other contract with a covered borrower" that fails to comply with any provision of 10 U.S.C. § 987 or its implementing regulations, including its MAPR disclosure requirement, "is void from inception of the contract."

113. Because Wyndham's timeshare contracts and promissory notes do not contain the required "statement of the MAPR" as required by the MLA, they are all "void from inception."

## BINDING ARBITRATION

114. Second, 10 U.S.C. § 987(e)(3) of the MLA also prohibits creditors from requiring covered borrowers to submit to mandatory arbitration.

115. Wyndham's standard-form timeshare contracts include binding mandatory arbitration provisions with no exception for covered borrowers under the MLA, including both contracts entered into with Plaintiffs.

116. Wyndham's timeshare contract includes the following arbitration provision, in pertinent part:

> The Parties agree that any dispute, claim, suit, demand or controversy arising out of or relating to this Agreement (any "Dispute") shall be determined exclusively and finally by individual arbitration, except as specified below. "Dispute" includes without limitation, any claim regarding breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising out of or related to the marketing, purchase and/or use of Owner's Ownership, Owner's use of Seller's

properties, and/or Owner's participation in any activities/events sponsored, organized, or made available by Seller or its affiliates.

Any Dispute will be submitted to a neutral arbitration, for a final and binding determination, known as an award. . . . Except as expressly provided below in this Dispute/Arbitration Clause, the parties waive and relinquish any and all rights to have a court or a jury resolve any Dispute.

(Exhibit A at Section 17 and Exhibit B Section 34).

117.  As a result of unlawfully requiring covered borrowers to enter into contracts containing mandatory arbitration provisions in violation of 10 U.S.C. § 987(e)(3) of the MLA, the timeshare contracts of Plaintiffs all members of the Class are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

## CLASS ACTION WAIVER

118.  Third, 10 U.S.C. § 987(e)(2) of the MLA prohibits creditors from requiring covered borrowers to "waive the borrower's right to legal recourse under any otherwise applicable provision of State or Federal law."

119.  Wyndham's standard-form timeshare contracts include a class action waiver provision which specifically requires Plaintiffs and all Class Members to "waive any right bring or join any representative or other claim brought on behalf of the general public, other PURCHASERS, or other persons similarly situated."  (Exhibit A at Section 17 and B at Section 34).

120. The right to participate in a class action stems from the Rules of Civil Procedure under both State and Federal law, including the right to bring this class action lawsuit under the MLA.

121. As a result of unlawfully requiring covered borrowers to waive their right to file or even participate in any class action lawsuit in violation of 10 U.S.C. § 987(e)(2) of the MLA, the timeshare contracts of Plaintiffs all members of the Class are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

122. For each of these three independent violations of the MLA, and in addition to voiding the contracts "from inception," pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

123. 32 CFR § 232.9(e)(1) further provides that Plaintiffs and each member of the Class are entitled to actual damage sustained but not less than $500 for each of the separate violations of MLA, plus appropriate punitive damages, equitable or declaratory relief, and any other available relief.

124. Wyndham is also liable for Plaintiffs' attorney fees and litigation costs pursuant to 32 CFR § 232.9(e)(2).

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs request the Court enter order and judgment as follows:

A.    An order certifying this action to proceed as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing the undersigned as Class Counsel;

B.    A judgment declaring that Plaintiffs' and the Class's timeshare contracts were void from the inception because they violated the MLA and awarding Plaintiffs and the Class the equitable, declaratory and injunctive relief set forth above pursuant to their implied right of action under 10 U.S.C. § 987 and/or 10 U.S.C. § 987(5)(A)(iii) and/or restitution/unjust enrichment under Florida law;

C.    A judgment awarding Plaintiffs and Class members actual damages as either the greater of all amounts they paid in connection with or pursuant to the illegal and void timeshare contracts or $500 per MLA violation, together with appropriate punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

D.    A judgment awarding Plaintiffs and the Class reasonable attorneys' fees and litigation costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

E.    A judgment awarding Plaintiffs and the Class all pre-judgment and post-judgment interest recoverable at law or in equity; and

F.    A judgment awarding Plaintiffs and the Class such other and further relief to which they are justly entitled.

### JURY TRIAL DEMAND

Plaintiffs and the Class demand a jury trial on all issues so triable.

Respectfully submitted this 31st day of March, 2023.

VARNELL & WARWICK, P.A.

/s/ Janet R. Varnell
Janet R. Varnell; FBN:  0071072
Brian W. Warwick; FBN:  0605573
Matthew T. Peterson, FBN: 1020720
Erika R. Willis, FBN: 100021
1101 E. Cumberland Ave.
Ste. 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352-504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*mpeterson@vandwlaw.com*
*ewillis@vandwlaw.com*
*ckoerner@vandwlaw.com*

***Counsel for Plaintiffs, individually and on behalf of all others similarly situated***